David Andrew BIRDWELL, Applicant,

v.

Jack SKEEN, et al.,
Defendants–Respondents.

Civ. A. No. TY–90–186–CA.

United States District Court,
E.D. Texas,
Tyler Division.

June 3, 1991.

David Andrew Birdwell, pro se.

Peter H. Barrett, Biloxi, Miss., Steven Michael Bozarth, Atty. General's Office, Austin, Tex., Connie R. DeArmond, Asst. U.S. Atty., Topeka, Kan., for defendants-respondents.

## MEMORANDUM OPINION

JUSTICE, District Judge.

Before the court for resolution is an application for the writ of habeas corpus filed by David Andrew Birdwell, pursuant to 28 U.S.C. § 2254. In his application, Birdwell attacks the validity of his Texas convictions for aggravated bank robbery and aggravated kidnapping.

*Statement of Facts*

In 1985, the applicant, Birdwell, pled guilty to federal bank robbery charges; and in 1986, he was convicted in Smith County, Texas, of aggravated kidnapping and aggravated bank robbery. All three of these convictions stem from the June 25, 1985, armed robbery of a Smith County bank. To facilitate this bank robbery, the applicant kidnapped a woman, locked her in the trunk of her car, used her car to drive to the bank, and then abandoned the car at a time when the woman was still locked in the trunk.

On July 25, 1985, applicant was arrested by federal authorities in Mississippi on federal bank robbery charges. Almost immediately, plea negotiations began involving applicant, the federal authorities, and the Smith County Criminal District Attorney's office. Two days after applicant's arrest in Mississippi, the Honorable Jack Skeen, Jr., Criminal District Attorney of Smith Coun-

ty, sent a letter offering not to prosecute applicant for aggravated robbery, if he pled guilty to the federal bank robbery charge pending against him, and also pled guilty to the pendant aggravated kidnapping charge in state court.

In the fall of 1985, state indictments were returned against applicant in Texas, for aggravated bank robbery and aggravated kidnapping. On December 5, 1985, applicant appeared before the United States District Court for the Southern District of Mississippi in accordance with Federal Rule of Criminal Procedure 20. The court accepted a plea agreement between applicant and the United States, wherein applicant agreed to plead guilty to the federal charge of bank robbery. Attached to the plea agreement, and incorporated therein, was the letter from Jack Skeen, Jr., to applicant and his attorney. From the transcript of the proceedings, it is clear that this letter was a strong inducement to applicant to enter into the plea agreement, *United States v. applicant*, 887 F.2d 643, 646 (5th Cir.1989) [1], and that applicant thought that its incorporation into the federal plea agreement had the effect of binding the State of Texas to the terms set out in the letter. After the court accepted applicant's guilty plea, it sentenced him to a twenty-year prison sentence.

On April 16, 1986, Jack Skeen, as Criminal District Attorney of Smith County, lodged a detainer against applicant with the Federal Prison authorities in Leavenworth, Kansas, where applicant was then incarcerated. On May 19, 1986, the Criminal District Attorney's office received a request from the applicant for a final disposition of the charges pending against him in Texas. This request was in compliance with the Interstate Agreement on Detainers ("IAD"), to which Texas and the United States are both signatories.

The IAD sets out procedures whereby prisoners incarcerated under the authority of one signatory jurisdiction who have a detainer lodged against them for charges in another signatory jurisdiction may demand that the charges against them be prosecuted within 180 days. If the charges are not prosecuted within the 180 day time limit, they must be dismissed. See Texas Crim.Proc.Code art. 51.14.

On August 6, 1986, applicant was brought to Smith County, for disposition of the outstanding indictments against him. His attorney filed a motion to dismiss the indictments under the Texas Speedy Trial Act. The Smith County District Court originally set the motion down for a hearing on August 22, 1986.

At that hearing, the prosecutor announced that he considered applicant's motion for dismissal to be a breach of his agreement to plead guilty to the charge of aggravated kidnapping, and added that if applicant persisted with his motion, the prosecution would consider the plea agreement to no longer be in effect. The applicant's attorney announced that he was ready to proceed on the motion to dismiss, but did not respond directly to the prosecutor's allegation that applicant's motion constituted a violation of the plea agreement.

The prosecution then requested a one week continuance because its principal investigator on the case had suffered an injury. The trial judge granted the prosecution's request, and the hearing was held three weeks later on September 12, 1986. Applicant's motion was overruled on the same day that the hearing was held.

On November 11, 1986, applicant filed a motion, to the effect that the 180–day time period in which he must be tried under the IAD would lapse on November 16, 1986,

---

**1.** Applicant originally filed his application for the writ of habeas corpus, attacking his federal conviction in the Southern District of Mississippi. This writ was initially denied by the District Court. The Court of Appeals for the Fifth Circuit vacated the denial and remanded the action, with instructions to the court to hold an evidentiary hearing and make findings of fact and conclusions of law. Such a hearing was

held on October 4, 1990, in the Southern District of Mississippi. However, on January 3, 1991, the Honorable Lansing Mitchell, Senior United States District Judge for the Eastern District of Louisiana (sitting by designation), ordered the action transferred to this court, for consolidation with applicant's application for the writ of habeas corpus regarding his state convictions.

and demanding that his case be scheduled on November 17, 1986, in place of the trial of another individual who was not in pretrial detention. No response was made to this motion.

On November 25, 1990, the applicant filed a motion to dismiss his indictment, because he had not been tried within the 180 day time period prescribed by the IAD. On December 2, 1986, applicant came before the District Court of Smith County for trial. Prior to the start of the trial, applicant's counsel urged consideration of the November 25 motion to dismiss. The court overruled applicant's motion, and stated: "The Court will state into the record that this is the first available trial date the court has been able to provide and overrules the motion."

Applicant was then tried before the court, and on December 3, 1986, was sentenced to two seventy-five year sentences, to run consecutively, and to run consecutive to his federal sentence.

*Application for Writ of Habeas Corpus under 28 U.S.C. § 2254*

In his application for writ of habeas corpus under 28 U.S.C. § 2254, applicant alleges that the state violated the Interstate Agreement on Detainers by not trying him within 180 days of when the Criminal District Attorney received notification of applicant's request for disposition of his state charges.

Applicant properly exhausted his state remedies, as required by 28 U.S.C. § 2254(b). He directly appealed his conviction to the Twelfth Court of Appeals of the State of Texas, sitting in Tyler, and thereafter sought discretionary review of that court's denial of relief with the Texas Court of Criminal Appeals. The Court of Criminal Appeals declined to hear his appeal.

█ In his direct appeal, applicant challenged his conviction under the IAD, the ground for which he claims relief in his application for the writ of habeas corpus. Two recent decisions by the U.S. Court of Appeals for the Fifth Circuit have held that if an applicant for federal writ of habeas corpus has presented his claims for relief to the Texas Court of Appeals on direct review, and to the Texas Court of Criminal Appeals in a petition for discretionary review, the applicant has fully exhausted his state remedies. *Myers v. Collins,* 919 F.2d 1074 (5th Cir.1990); *Burnett v. Collins,* No. 90–4617 (5th Cir. Nov. 30, 1990). Therefore, applicant's claim is ripe for review on its merits.

Article III(a) of the IAD, Tex.Crim.Proc. Code Art. 51.14, states that a prisoner

shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for final disposition to be made of the indictment, information, or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

The files of the Smith County District Court regarding applicant's state convictions reflect that requests for disposition of his indictment and a notice of his place of imprisonment were signed by applicant and the warden of the United States Penitentiary at Leavenworth, Kansas, respectively, on May 8, 1985, and that copies of these documents accompanied a May 14, 1985, letter from the Administrative Systems Supervisor of the federal penitentiary to Criminal District Attorney Jack Skeen. Copies were also sent to the clerk of the state district court in Smith County. Copies of return receipts indicating that the Smith County District Clerk's Office, as well as the Smith County Criminal District Attorney's Office, received these documents on May 19, 1985, were attached to applicant's objections to the Magistrate's Report regarding his application for the writ of habeas corpus, which was filed July 30, 1990.

█ The 180 day period referred to in Article III(a) of the IAD begins to run when a prisoner's request for disposition of pending charges is delivered to the prose-

cuting authority and to the court of the jurisdiction where the detainer is lodged. *Gibson v. Klevenhagen*, 777 F.2d 1056, 1058 (5th Cir.1985); *Ravenscraft v. State*, 753 S.W.2d 741, 742 (Tex.Ct.App.—Austin, 1988).[2] Therefore, under the IAD, Texas authorities had 180 days from May 19, 1985, in which to bring applicant to trial, excluding any periods for which the Texas state court had issued a continuance for good cause in open court.

Applicant was brought to trial on December 2, 1986, 197 days after the IAD trial period began. However, if the postponement of the hearing on applicant's motion to dismiss from August 22 to September 12 was the result of a reasonable and necessary continuance granted in open court, then the 21 days between August 22 and September 12 may be deducted from the 197 days. This would leave an acceptable period of 176 days from the date of notification to the date of trial.

At the proceeding on August 22, the court clearly granted a one week continuance of the hearing on applicant's motion for dismissal, stating that the hearing would be held "toward the end of next week. I'll have my coordinator get with you and when that trial is over [a criminal trial scheduled the next week], we will go ahead and it will be sometime Thursday or Friday." However, the hearing was actually held three weeks later. No explanation on the record is given by the trial court for this additional two week delay, and there were no further continuances granted in open court. In overruling applicant's later motion to dismiss because the 180 day trial period had expired, the court did not mention the earlier motion to dismiss, or make reference to any delay that it may have caused in bringing applicant to trial; it simply stated that December 2 was "the first available trial date the court has been able to provide."

The Twelfth Court of Appeals concluded that the applicant's motion to dismiss delayed the setting of his trial by twenty-four days, the period between August 19, when the motion was filed, and September 12, when the motion was overruled. The court stated: "[T]he IAD does not compel the court to decide such motions 'immediately upon filing on pain of dismissal of the indictment for delay.' *Foran* [*v. Metz*, 463 F.Supp. 1088], 1097 [(S.D.N.Y.), *aff'd mem.*, 603 F.2d 212 (2nd Cir.), *cert. denied*, 444 U.S. 830, 100 S.Ct. 58, 62 L.Ed.2d 38 (1979)]." While the Texas Court of Appeals' analysis is most likely correct when a defendant has requested a postponement of a hearing on a motion, or when the motion has been taken under advisement by the court, it is inapposite to the case at bar. The trial court ruled on the applicant's motion on the same day that the hearing was held; therefore, the actual delay caused by the need for the court to consider and decide defendant's motion was at most one day. Further, the defendant was ready to proceed with a hearing on his motion on August 22; therefore, the postponement of the hearing until September 12 cannot be automatically attributed to him. For these reasons, the ruling of the Twelfth District Court of Appeals does not adequately resolve whether applicant's trial occurred within the 180 day IAD limit.

Neither the United States Court of Appeals for the Fifth Circuit or the Texas Court of Criminal Appeals has had occasion to discuss the meaning of the language, "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." However, the Court of Appeals for the Sixth Circuit has held that a court practice, whereby the court clerk adjourned proceedings before they were scheduled to occur, did not meet the requirements of the IAD, even though the adjournment was ultimately authorized by the presiding

---

**2.** The IAD states that the prisoner shall deliver to the warden or other official at his place of incarceration his request for disposition, and that this official shall "promptly" forward such request and a written notice of incarceration to the appropriate prosecuting official and to the court. Art. III(b) of the IAD. In the case at bar, it appears that the Leavenworth officials fully complied with this provision of the IAD. Therefore, it is not necessary to consider whether an unwarranted delay in delivery of a prisoner's request would have an effect on this rule.

judge, and both parties were notified and given the opportunity to object to the adjournment. *Stroble v. Anderson*, 587 F.2d 830 (6th Cir.1978), *cert. den.* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). The court explained that, "[w]hatever merits informality may have in some situations, it is obviously inconsistent with the highly structured procedural requirements of the IAD," *Id.* at 839, and went on to comment:

> When forty-six states, the District of Columbia, and the United States Government, acting through Congress and the President, entered into the I.A.D., each of the forty-eight participants yielded some small measure of its sovereignty. The Agreement was written with meticulous care. It even anticipated the possibility that its terms might have harsh effects if employed by state officials who were ignorant of its terms.

*Id.* at 840.

Likewise, the Court of Appeals for the Second Circuit has stated the IAD's requirement that continuances be granted in open court was to prevent *ex parte* and *sua sponte* continuances, explaining as follows:

> We have previously emphasized, outside of the context of the Detainers Act, the importance of granting the defendant an opportunity to be heard before granting an extended criminal trial continuance. *United States v. Didier*, 542 F.2d 1182, 1189 (2nd Cir.1976). The Detainers Act imposes similar requirements for similar reasons: unless the defendant is given an opportunity to participate, his speedy trial rights may be whittled away in the non-adversary context of ex parte communications between the government and the court.

*United States v. Ford*, 550 F.2d 732 (2nd Cir.1977), *aff'd* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). *See also Ravenscraft*, 753 S.W.2d at 741 (delay in bringing defendant to trial unexcusable under the IAD where there is no record of a continuance being granted).

The reasoning of the Second and Sixth Circuits is persuasive. The wording of the IAD clearly permits a judge to continue a case beyond the 180 day period if required by the circumstances. However, the statute is equally clear regarding the procedure that must be followed in granting such a continuance. It must be in open court with the defendant or his attorney present, and it must be granted for good cause. Further, such a continuance may be granted only to the extent that it is "reasonable and necessary."

The consequence of failure to adhere to the 180 day limit also supports a literal reading of Article III. Article V(c) of the IAD states that

> in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

Non-discretionary dismissal with prejudice of all pending charges against a defendant is a severe sanction, and evidences a strong desire to ensure prompt disposition of cases. It seems highly unlikely that forty-six states, the United States, and the District of Columbia would agree to such an absolute penalty without carefully considering both the penalty and the importance of the time limit. In light of the scrutiny that must have been visited upon sections III and V of the IAD, they shall be assumed to mean exactly what they say.

█ In the case at bar, only one continuance was granted in open court. The trial judge explicitly stated that the continuance was for at most one week. On these facts, it is impossible to attach the additional two weeks delay between the August 22 and September 12 hearings to this continuance. Consequently, even excluding the seven day continuance, the trial date of December 2 was beyond the 180 day limit set forth in Article III of the IAD. It follows that the trial court erred in not granting applicant's November 25, 1986, motion to dismiss under Article V(c) of the IAD, and his applica-

tion for the writ of habeas corpus should be granted.[3]

On April 24, 1991, the Honorable Dan Morales, Attorney General for the State of Texas, was joined as a necessary party to this action in accordance with Rule 2 of the Federal Rules Governing Section 2254 Cases, and was given twenty days to show cause why this application for the writ of habeas corpus should not be granted. On May 10, 1991, the Texas Attorney General[4] moved that he be dismissed from this action, stating that the detainer lodged against applicant was issued by the Smith County Criminal District Attorney, not the State of Texas; therefore, the District Attorney, not the Attorney General, was the proper respondent to this action. The Texas Attorney General's motion to dismiss was granted, and on May 24, 1991, the Smith County Criminal District Attorney filed a response to the court's show cause order which had been directed to the Texas Attorney General.

■ The response of the Smith County Criminal District Attorney does not adequately show cause why applicant's application for the writ of habeas corpus should not be granted. The Criminal District Attorney argues that the reasoning of *Stroble* and *Ford* is not applicable to the case at bar, because, in the present case, a one week continuance was granted in open court, and the informal extension of that continuance an additional two weeks did not cause an extended delay of applicant's trial. This argument might be persuasive, if Article IV(c) of the IAD provided for discretionary dismissal of an indictment as a sanction for violating the IAD time limits.

However, because Article IV(c) states that "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same [the indictment] with prejudice," a district court is not authorized under the IAD to decline to dismiss an indictment, if it has been determined that the 180 day deadline has been exceeded.

The Criminal District Attorney also argues that the following days should be excluded from the 180 day time limit: days on which applicant filed motions, days on which the court conducted hearings on these motions, days between the filing of a motion and the hearing on the motion, days on which the court issued an order on the motions, and the Saturday and Sunday after the initial 180 day period had elapsed.

The cases relied on by respondent in his brief, *United States v. Scheer*, 729 F.2d 164 (2nd Cir.1984), and *Foran*, 463 F.Supp. at 1088, do not support his contention that the above days should be excluded from the IAD time limit. In *Scheer*, the Court of Appeals for the Second Circuit found that the applicable IAD time limit had not been violated, because the delay complained of by the defendant resulted from continuances granted at his request. *Scheer*, 729 F.2d at 168–69. Likewise, the district court in *Foran* excluded from the IAD time limits days attributable to delays caused by continuances granted in the presence of the defendant, or by periods during which pretrial motions were under advisement. In fact, the *Foran* court explicitly excluded a thirty day period of de-

---

**3.** Although the trial judge stated that the December 2, 1986, trial date was the earliest available, this will not save the conviction. Docket congestion is not "good cause" for delay under the IAD. *Ford,* 550 F.2d at 743. Further, even if docket congestion were an acceptable reason to grant a continuance, the court's statement that "this was the first available trial date" at the start of trial, and after the 180 day limit had lapsed, cannot be considered a good cause continuance granted in open court. This is especially true, in light of the fact that Birdwell's November 11 motion requesting a November 17 trial date put the court on notice that the 180 day deadline was fast approaching, and gave it

an opportunity to grant a continuance in open court.

**4.** The motion actually stated that it was filed on behalf of respondent, James A. Collins, Director, Institutional Division, Texas Department of Criminal Justice, by and through his attorney, the Attorney General of Texas. However, the body of the motion requests that the Texas Attorney General be dismissed as a party to this litigation. Since Collins is not a party to this litigation, the motion was considered as having been filed by the Attorney General on his own behalf, not on behalf of Collins.

lay for which a continuance was not granted, explaining:

> Although the thirty days (March 21, 1974 to April 21, 1974) that the prosecutor was engaged in another criminal trial would be good cause for a continuance, nothing in the record suggests that the prosecutor sought a continuance on this basis. Accordingly, this period cannot be excluded from the time limitations of the Interstate Agreement on Detainers.

*Foran,* 463 F.Supp. at 1097.

■ Under the reasoning of *Scheer* and *Foran,* the only days that are excludable from the IAD time limit in the case at bar are the one week continuance granted in open court, and, arguably, two days in which the court had applicant's motions under advisement. Excluding these days from the IAD time limit does not bring the start of applicant's trial within 180 days. The IAD does not authorize the exclusion of every day that a defendant filed a motion; at a minimum, there must be some showing that the defendant's actions caused a delay in the start of the trial. Since there is no evidence, and no reason to suppose, that applicant's trial began on December 2 instead of November 17, because applicant requested an attorney on August 11, because he filed a motion on November 11 requesting that his trial begin on November 17, or because November 15 and 16 are weekend days, these days cannot be excluded from the IAD time limit.

In consideration of the foregoing, the writ of habeas corpus vacating applicant's convictions for aggravated kidnapping and aggravated robbery in the District Court of Smith County, Seventh Judicial District of Texas, shall be issued contemporaneously with this order.