UNITED STATES of America,
Plaintiff-Appellee,

v.

Benton F. THOMAS,
Defendant-Appellant.

No. 77–5206.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1978.

Kerry J. Nahoom, Fort Lauderdale, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., C. Wesley G. Currier, Richard A. Woolf, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before WISDOM and GEE, Circuit Judges, and VAN PELT *, Senior District Judge.

VAN PELT, Senior District Judge:

Benton F. Thomas appeals (A) his conviction on both counts of a two count indict-

* Senior District Judge of the District of Nebraska, sitting by designation.

ment charging him with (1) possessing a firearm, in this case a silencer, which had not been registered to him in violation of 26 U.S.C. §§ 5861(d) and 5871, and (2) transferring said silencer without having paid a transfer tax as required by 26 U.S.C. § 5811, in violation of 26 U.S.C. §§ 5861(e) and 5871, and (B) the denial of his motion for judgment of acquittal. Concurrent sentences of a year and a day were imposed on each count.

Thomas' contentions on appeal are:

(1) that 26 U.S.C. §5845(a)(7) (which is the definitional section of the National Firearms Act as amended in 1968, portions of which appellant was charged with violating, as is above set forth) is unconstitutional because the word "silencer" is not defined in the statute and thus the statute is vague and overbroad, in contravention of the Due Process Clause of the Fifth Amendment;

(2) that the evidence was insufficient to prove the device possessed by him was a silencer; and

(3) that there was insufficient evidence to show that he had knowingly and willingly transferred a firearm without having paid the transfer tax.

We find no merit in these contentions and affirm the conviction.

 Thomas' first assignment of error concerns 26 U.S.C. § 5845, above mentioned. Subsection (a) thereof lists eight items which are considered to be "firearms." The seventh is

(7) a muffler or a silencer for any firearm whether or not such firearm is included within this definition.

The other items identified as firearms (i. e. machineguns, rifles, shotguns, destructive devices) are further defined in subsequent subsections of § 5845. The term "silencer" is not further defined. Thomas argues that the failure to include such a definition in the statute makes it vague, indefinite, and overbroad and that it is a violation of due process to hold any man responsible for conduct which he could not reasonably understand to be proscribed.[1] In support of this claim appellant cites *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1953). *Harriss* at 618, 74 S.Ct. 808 states that if a statute can be made constitutionally definite by a reasonable construction the court is under a duty to give it such a construction. The general rule is that words of a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary. *Burns v. Alcala*, 420 U.S. 575, 580–81, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975). Using these principles, Chief Judge Walter E. Hoffman in *United States v. Schrum*, 346 F.Supp. 537, 540 (E.D.Va.1972), found that there was a commonly accepted meaning to the word "silencer" which should be used in construing the statute. Having independently considered the question, we agree with *Schrum's* analysis. Webster's Third New International Dictionary (1966) defines a silencer as:

c: a silencing device for small arms that permits the exit of the projectile but reduces the noise without materially impeding the escape of the exploding gases d: a device for silencing or reducing noise.

A man of common intelligence would understand a silencer to be a device specifically designed or used to make the firing of a weapon quieter. The definition is so simple and obvious that we conclude, as did the Congress, that it needs no further explanation in the statute.

---

1. Initially we note that appellant was not misled in this case. Agent Williams' statement, introduced into evidence at the bench trial, shows that in his undercover capacity he met appellant at a bar to discuss the possible purchase of a silencer equipped rifle. Thomas took him to the trunk of his car and showed him the .22 rifle, and explained the silencer was in the trunk of a different car so as to avoid trouble. The silencer in this case was 18½″, made of aluminum, and screwed on the rifle. While appellant alleges that without definition the term might be so broad as to include a potato, recoil pad, or baby bottle nipple, the facts show in this case the object was clearly designed for use as a silencer, functioned as a silencer, and Thomas was not an unsuspecting citizen ensnared by ambiguous language.

■ Appellant's second assignment of error is that the evidence was insufficient to show the device possessed by him was a silencer. Appellant complains that there was no expert testimony that the device reduced the noise level or that its primary purpose or function was to reduce the noise level of the weapon, or that it functioned under the gas absorption principle. Specific claim is made of the lack of expert testimony that the device reduced the decibel level of the weapon's report. However a DEA agent who had heard other .22 caliber guns being fired and who heard appellant demonstrate the .22 caliber rifle and silencer in question testified he was surprised because he heard virtually nothing except perhaps the movement of the trigger, and this is not what he would have expected from a rifle alone. A special agent for the Alcohol, Tobacco and Firearms Administration testified that he fired the weapon both with and without the silencer and that there was a great deal of difference in the sound of the weapon when it had the silencer on—the silencer reducing the noise of the firearm to just the bolt moving back and forth.[2] In light of this testimony, we feel there was substantial evidence to support the finding that the object was in fact a silencer. The average person is capable of telling whether there is an appreciable difference in the sound of a gun equipped with a silencer from one not so equipped. There was no evidence the device was ineffective, such as in *Schrum, supra*. We see no need for expert testimony beyond that introduced in this case. We need not discuss whether the DEA agent and the special agent were lay witnesses under Rule 701 of the Federal Rules of Evidence or experts qualified by knowledge, experience or training under Rule 702. As stated in 3 Weinstein's Evidence ¶ 701[02] (1977) at 701–17: "Basically, Rule 701 is a rule of discretion." The testimony of both witnesses was rationally based upon the perception of the witness and its receipt falls within the broad discretion trial judges have always had.

**2.** The chain of custody was stipulated in the lower court, so there can be no claim that the gun sold by appellant and tested by the ATF agent was not the same weapon.

■ Appellant's third contention is that there was insufficient evidence to sustain a conviction under Count II relating to the failure to pay a transfer tax. However, since the sentence on each count was concurrent, and we have affirmed the Count I conviction, we need not reach this question. *United States v. Ragano*, 5 Cir. 1975, 520 F.2d 1191, 1199.

The judgment is affirmed.